UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PROTECTION CAPITAL, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>IP CO., LLC, a Georgia limited liability company; GLOCOM, INC., a Virginia Corporaiton,<br><br>Defendants. | CASE NO. 18cv1880-L-WVG<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DOC. 36]** |

Pending before the Court is Plaintiff Protection Capital, LLC's ("PPC") Motion for Partial Summary Judgment, or in the Alternative, for an Order Treating Specified Facts as Established ("MSJ") filed pursuant to Federal Rule of Civil Procedure 56. Doc. 36. Defendants IP Co., LLC ("IPCO") and Glocom, Inc. ("Glocom") opposed the MSJ on one ground. *See* Doc. 40. Pursuant to Civil Local Rule 7.1.d.1, the Court has decided this motion without oral argument. For the following reasons, the Court **GRANTS** PPC's MSJ in its entirety.

## **Background**

This case arises from IPCO's failure to continue payments to PPC pursuant to a Convertible Promissory Note and a Note Purchase Agreement the two parties

1

executed on April 30, 2007. Under the Note, IPCO had access to unsecured loans of up to a maximum aggregate balance of $500,000 between 2007 and 2012. Under the Purchase Agreement, IPCO and its affiliates were required to pay PPC five percent (5%) of all "products, proceeds and amounts received" with respect to the intellectual property identified in the Purchase Agreement. Between 2008 and 2017, IPCO remitted the five percent (5%) owed to PPC under the Purchase Agreement without any form of protest or reservation of rights.

In 2017, Glocom purchased all of IPCO's membership interests with knowledge of IPCO's continuing financial obligations to PPC under the Note and Purchase Agreement. PPC alleges that, after acquisition, Glocom instructed IPCO to breach its financial obligations to PPC under the Purchase Agreement. Due to IPCO's failure to pay PPC since the Glocom acquisition, between $150,000 and $500,000 is owed by IPCO to PPC at minimum. PPC has since provided IPCO with written notice of default and demand for payment.

On August 8, 2018, PPC filed the original complaint against IPCO. Subsequently, the Court found good cause to grant PPC leave to amend its complaint twice. *See* Docs. 20, 26. PPC filed the operative Complaint on May 31, 2019, alleging IPCO is liable for (1) Breach of Contract; (2) For an Accounting, and (3) For Declaratory Relief. *See* Doc. 31.

On July 19, 2019, PPC filed the instant motion, seeking a grant of partial summary judgment with the following relief: (1) requiring IPCO to provide quarterly reports on revenues received by it, SIPCO, and other affiliates, and by any and all transferees of relevant patents, then remit five percent (5%) thereof to Protection Capital within thirty (30) days; (2) finding that IPCO owes PPC, through the end of calendar year 2018, the sum of $595,866.02 with interest thereon at the contract rate; (3) ordering that IPCO, SIPCO, other affiliates, and any and all transferees of the relevant patents to make available, at a reasonable time and location, the books and records of each company reflecting all revenue

received from the intellectual property subject to the Purchase Agreement; and (4) declaring (a) the Purchase Agreement valid and enforceable; and (b) IPCO must report quarterly on revenues received by it, SIPCO, other affiliates, and transferees, then remit five percent (5%) thereof to PPC within 30 days. *See* Doc. 36 at 2-3. The first two requests relate to PPC's first claim for relief (Breach of Contract), the third request relates to PPC's second claim for relief (For an Accounting), and the fourth request relates to PPC's Declaratory Relief claim. *See id.* In opposition, IPCO solely contends that it has raised a genuine dispute of material fact with respect to unconscionability, IPCO's thirteenth affirmative defense, pursuant to Cal. Civ. Code section 1670.5. *See* Doc. 40. This motion has been fully briefed and is ready for disposition.

## **Legal Standard**

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

Where "the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *See C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In this instance, the moving party must first establish that no genuine issue of fact exists on an issue material to its case. *See id.*

Conversely, where the moving party does *not* have the ultimate burden of persuasion at trial, it "has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000)

(citation omitted) (emphasis added).  To satisfy its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *See Celotex*, 477 U.S. at 331.  As such, the moving party would be entitled to summary judgment as a matter of law if the nonmoving party does not present sufficient evidence to support its claim.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

If the moving party fails to discharge its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).  If the moving party meets the initial burden, the nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts."  *Matsushita Elect. Indus. Co., Ltd. v Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rather, the nonmoving party must "go beyond the pleadings" and by "the depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

## Discussion

In the instant motion, PPC seeks an order establishing that IPCO owes PPC $595,866.02 under the Purchase Agreement for revenues earned through calendar year 2018.  Doc. 36-1 at 24.  Although PPC challenged, *inter alia*, whether genuine issues of material facts existed related to multiple defenses raised by IPCO in its' Answer[1], IPCO only contests whether the Purchase Agreement is

---

[1] PPC contends that IPCO cannot present evidence creating a genuine issue of material fact as to any alleged lack of actual authority or its apparent authority to be bound to the Purchase Agreement as written and performed.  *See* Doc. 36-1.  PPC claims IPCO cannot show genuine issues of material fact exist concerning the following affirmative defenses: (1) Fraud, Duress, and Undue Influence; (2) Estoppel/Waiver; (3) Payment; (4) Lack of Consideration; (5) Failure of Condition Precedent; (6) Unclean Hands; and (7) Offset.  *See id.*  PPC also contends that the Note and Purchase Agreement

4

unconscionable as a matter of law. As such, the Court finds that IPCO concedes to the validity of PPC's other contentions raised in the instant motion and will only address the unconscionability issue.

"If the court as a matter of law finds the contract or any cause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract[.]" Cal. Civil Code section 1670.5. Generally, the procedural and substantive signs of an unconscionable contract include onerous terms due to unequal bargaining power and one-sided results. *Armendariz v. Found. Health Psychcare Servs., Inc.*, 99 Cal.Rptr.2d 745, 767 (2000). "The prevailing view is that [procedural and substantive unconscionability] must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability." *Id.* (citing *Stirien v. Supercuts, Inc.*, 60 Cal.Rptr.2d 138, 145 (1997)). However, both elements need not apply with equal force; courts evaluate the overall impact of any procedural irregularities in contract formation and unreasonableness of the substantive terms on a sliding scale. *Id.*

PPC contends the Purchase Agreement is not unconscionable as a matter of law. Doc. 36-1 at 22. PPC provides that, at the time of contracting, the following circumstances existed: (1) both parties were sophisticated and well-represented; (2) the contract was executed after a three-month negotiation period; (3) it was possible that PPC would lose the unsecured $500,000 investment with no right of recourse against IPCO; (4) a significant likelihood of non-payment pursuant to the Purchase Agreement existed; and (5) the payment provision was plainly evident, not hidden, in the contract and honored for ten (10) years. Doc. 36-1 at 23. As such, the Court finds that PPC has carried its burden to show that that IPCO does not have enough evidence to prove unconscionability at trial.

---

violated neither California's Usury Laws nor California's Finance Lenders Law. *See id.* None of these contentions were challenged by IPCO in its' opposition brief. *See* Doc. 40. Consequently, the Court GRANTS PPC's motion on these grounds.

<u>Procedural Unconscionability</u>

**a. Representation**

IPCO contends that a genuine issue exists as to whether Michael S. Kagnoff and James Robbins assumed an attorney-client or fiduciary relationship when they agreed to provide IPCO "strategic advice." Doc. 40 at 22. "An attorney-client relationship exists for purposes of the privilege whenever a person consults an attorney for the purpose of obtaining the attorney's legal service or advice." *Kerner v. Superior Court*, 141 Cal.Rptr.3d 504, 529 (2012) (citation omitted). However, "[i]t is settled that the attorney-client privilege is inapplicable where the attorney merely acts as a negotiator for the client, gives business advice or otherwise acts as a business agent." *Zurich Am. Ins. Co. v. Superior Court*, 66 Cal.Rptr.3d 833, 846 (2007) (citation omitted). IPCO provides no direct evidence that either Mr. Kagnoff or Robbins ever represented IPCO, its affiliates, or any IPCO's principals. In fact, Mr. Kagnoff declares that, at the time of contracting, IPCO had an experienced and well-respected corporate transaction and securities attorney, Oliver Lee, as one of its principals. Doc. 36-4 at 2. Kagnoff also notes Mr. Lee's business acumen, experience, and ability to protect IPCO's interests during negotiations. *Id.* To the extent PPC's principals offered IPCO any strategic business advice prior to execution of the Note and Purchase Agreement, no attorney-client relationship was created. Thus, the Court finds that no attorney-client relationship commenced between PPC's principals and IPCO and both parties were well represented during negotiations. Therefore, no procedural unconscionability existed on this ground.

**b. Bargaining Position**

IPCO intimates that unequal bargaining power existed in negotiations because Mr. Robbins and Kagnoff were aware of IPCO's dire financial position. Doc. 40 at 25. The Court interprets IPCO's contention as it claiming its' assent to the Purchase Agreement was procured by economic duress. "Economic duress

can excuse an innocent party's contractual obligations when the other contracting party does a wrongful act which is sufficiently coercive to cause a reasonably prudent person faced with no reasonable alternative to succumb to the perpetrator's pressure." *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1119 (9th Cir. 2018) (citations omitted). Economic duress exists when there is: "(1) a sufficiently coercive wrongful act on the part of the defendant; (2) no reasonable alternative on the part of the [party under duress]; (3) knowledge of the [party under duress]'s economic vulnerability; and (4) actual inducement to contract." *Tanner v. Kaiser Found. Health Plan, Inc.*, 2016 WL 4076116, at *4 (N.D. Cal. Aug. 1, 2016).

The record indicates that IPCO was involved in several lawsuits challenging patents to various wireless mesh networking technologies prior to the initial meeting with PPC. Doc. 36-4 at 2. The record also reveals that PPC's principals were aware that IPCO needed urgent funding for patent registrations, licensing activities, and ongoing litigation. *Id.* During the three months of negotiations, it became apparent that IPCO's survival and its intellectual property was at risk. *Id.* However, IPCO has not presented evidence of any wrongful or coercive act committed by PPC in negotiation. Likewise, IPCO fails to set forth evidence that it had no reasonable alternative for financing besides PPC. Notwithstanding, while IPCO could be viewed as a vulnerable negotiating party, PPC risked losing the money the entire line of credit created under the Note if IPCO could not repay. Therefore, IPCO's assent to the Note and Purchase Agreement was not obtained by economic duress.

Accordingly, the Court finds that IPCO has not satisfied its burden to show a genuine issue exists as to procedural unconscionability here.

<u>Substantive Unconscionability</u>

**a. Percentage Profit Sharing**

IPCO also contends that the five percent (5%) gross profit-sharing

provision of the Purchase Agreement is substantively unconscionable. Doc. 40 at 27. IPCO first frames the percentage payment as an interest rate for the initial line of credit then frames the percent payment as the cost of legal services. *Id.* at 27-29. Due to the Court's finding above that no attorney-client relationship was created between PPC's principals and IPCO, the Court only discusses the interest rate contention here.

The California Supreme Court instructs that unconscionability "is a flexible doctrine," that "requires more than just looking at one particular term in a contract, comparing it to a fixed benchmark, and declaring the term unconscionable." *De La Torre v. CashCall, Inc.*, 236 Cal.Rptr.3d 353, 364 (2018). "An interest rate is the price charged for lending a particular amount of money to a given individual or entity." *Id.* at 359. "[T]o declare an interest rate unconscionable means only that—under the circumstances of the case, taking into account the bargaining process and prevailing market conditions—a particular rate was overly harsh, unduly oppressive, or so one-sided as to shock the conscience." *Id.* at 359, 366.

IPCO fails to set forth evidence to show that the five percent gross profit-sharing provision is either interest or unconscionable. The Note obligated IPCO to pay PPC the principal line-of-credit sum of up to $500,000, or a lesser amount if that amount was advanced, along with any "accrued and unpaid interest" at the rate of six percent (6%) per year before April 30, 2012. *See* Doc. 43 at 3. With that in mind, the five percent (5%) profit-sharing provision therefore could not act as interest here as it was not the price PPC charged for establishing the line of credit for IPCO. In fact, the Court believes the profit-sharing provision is more akin to a royalty fee than interest. Notwithstanding, it has not been shown that the provision unreasonably favors PPC or that its manifestation is unexpectedly harsh. During 2015-2017, IPCO paid PPC $2,000,246.30 under the profit-sharing provision only due to IPCO and SIPCO's generation of $40,004,926.00 in

intellectual property revenue. Doc. 43 at 5. The percentage payment is not variable. As such, IPCO has not established through evidence how keeping 95% of its' gross profits is conscience shocking. Therefore, the Court finds the five percent (5%) profit-sharing provision is not substantively unconscionable.

## Conclusion

For the foregoing reasons, the Court GRANTS PPC's Motion for Partial Summary Judgment in its entirety. As such, the Court hereby orders as follows:

(1) On the Breach of Contract claim, IPCO shall provide quarterly reports it has received since the 2018 year regarding the revenues of IPCO and SIPCO, other affiliates, and patent transferees and remit five percent (5%) thereof to PPC within thirty (30) days;

(2) On the Breach of Contract claim, IPCO shall remit to PPC $595,866.02, with interest at the contract rate, to satisfy its 2018 financial obligations under the Purchase Agreement;

(3) On the Accounting claim, IPCO, SIPCO, other affiliates, and any transferees of the relevant patents shall make available, at a reasonable time and location, the books and records of each company reflecting all revenue received from the intellectual property subject to the Purchase Agreement; and

(4) The Court declares the Purchase Agreement valid and enforceable; thus, IPCO shall report quarterly on revenues received by it, SIPCO, other affiliates, and transferees, then remit five percent (5%) thereof to PPC within 30 days.

Date: January 28, 2020

Hon. M. James Lorenz
United States District Judge